# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. D. HOPKINS, Minor.

UNPUBLISHED
September 13, 2018

No. 342230
Wayne Circuit Court
Family Division
LC No. 14-516829-NA

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to ADH under MCL 712A.19b(3)(g) (failure to provide proper care and custody), (i) (prior termination due to serious and chronic neglect and prior attempts at rehabilitation unsuccessful), and (j) (reasonable likelihood of harm if returned to parent's care). We affirm.

Respondent first contends that the trial court clearly erred by finding grounds for termination. We disagree.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court "review[s] for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id*.

Under MCL 712A.19b(3)(g), a trial court may terminate parental rights when "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."[1] "A parent's failure to participate in and benefit

---

[1] Effective June 12, 2018, MCL 712A.19b(3)(g) was amended. Under the old version of the statute, which was in effect when respondent's rights were terminated, a parent's failure to provide proper care or custody was a statutory ground for termination "without regard to intent" if there was "no reasonable expectation that the parent [would] be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g). Under the current version of the statute, the Legislature added a requirement that the parent's

from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Here, respondent's rights were terminated in large part due to her failure to participate in and benefit from her service plan in a previous case in which her rights to another child, PM, were terminated. "The doctrine of anticipatory neglect recognizes that '[h]ow a parent treats one child is certainly probative of how that parent may treat other children.' " *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001), quoting *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973). In respondent's previous case, she was offered extensive services, including parenting classes; a psychological evaluation and a psychiatric evaluation; weekly random drug testing; housing assistance; and individual counseling, domestic violence counseling, and substance abuse counseling. With respect to some of these services, respondent appeared to never make any headway. In particular, respondent never adequately addressed her substance abuse or housing issues, which remained problems for virtually all of the prior proceedings. As for certain other services—such as individual counseling—there was some evidence of respondent's participation, but that evidence also showed that any participation was inconsistent. Moreover, as the case progressed, respondent's inconsistent participation eventually stopped, and by the time of the termination hearing in PM's case—which was over 18 months after PM's removal—respondent was in full noncompliance with her service plan.

Respondent's actions in the current case continued to show a lack of initiative to participate in and benefit from services, which—along with evidencing that she would not provide proper care or custody, *In re White*, 303 Mich App at 710—demonstrated that there is no reasonable expectation that respondent will be able to address her issues within a reasonable time. At the time of ADH's removal, respondent had failed to rectify many of her previously identified problems, showing that she had apparently not benefitted from the services from her previous case. In particular, respondent continued to lack suitable housing at the time of ADH's removal. This failure was in spite of the Department of Health and Human Services' (DHHS) workers' attempts to provide respondent with housing services prior to the child's removal.[2]

---

failure occur at a time when, "in the court's discretion," the parent was "financially able to" provide proper care or custody. MCL 712A.19b(3)(g) as amended by 2018 PA 58.

[2] Respondent complains that she was not provided reasonable efforts in this case. This statement is arguably incorrect because Elise Peeples with the DHHS testified that she attempted to offer respondent housing assistance prior to ADH's removal. Regardless, under the version of MCL 712A.19a(2)(c) in effect at the time of ADH's removal, respondent was not entitled to reasonable efforts because she had her rights to another child, PM, involuntarily terminated. Even under the current version of that statute, which became effective June 12, 2018, respondent would not have been entitled to reasonable efforts. The current version of MCL 712A.19a(2)(c) states that reasonable efforts are not required if the parent "had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." MCL 712A.19a(2)(c) as amended by 2018 PA 58. Because respondent had not rectified the conditions that led to the termination of her rights in PM, including her lack of suitable housing, she was not entitled to reasonable reunification efforts.

Elise Peeples with the DHHS testified that respondent chose not to engage in these additional services offered by the DHHS, which eventually led to ADH's removal. Respondent's nonparticipation continued once the proceedings began; she was not present at a single hearing and otherwise failed to participate in any part of the proceedings in this case. Peeples also testified that respondent had not contacted her to find out where the child was placed or to schedule visitation, and that, to the best of Peeples's knowledge, respondent did not even know where the child was placed. Based on the foregoing, we conclude that clear and convincing evidence—including respondent's history of noncompliance with her service plan, her failure to benefit from services, and her lack of initiative in both this case and the prior proceedings involving PM—established that respondent failed to provide proper care or custody for the child and that there is no reasonable expectation that she will be able to do so within a reasonable time. Thus, the trial court did not clearly err by finding that termination was proper under MCL 712A.19b(3)(g).

"Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

On appeal, respondent also argues—in one generalized sentence without citations—that the trial court clearly erred by finding that termination was in the child's best interests. Based on respondent's complete failure to adequately brief this issue, we deem it abandoned. See *Hodge v Parks*, 303 Mich App 552, 557 n 1; 844 NW2d 189 (2014) ("A party cannot simply announce a position and expect the court to search for authority to sustain or reject that position."); *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

Even if we addressed the issue, we would conclude that it is without merit. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. Appellate courts "review for clear error . . . the court's decision regarding the child's best interests." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000), superseded by statute on other grounds as recognized in *In re Moss*, 301 Mich App at 83.

The focus at the best-interest stage is on the child, not the parent. *In re Moss*, 301 Mich App at 87. The trial court should weigh all the evidence available to it in determining the child's best interests, *In re Trejo*, 462 Mich at 364, and may consider such factors as

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. [*In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted).]

Other considerations include "the parent's compliance with his or her case service plan [and] the children's well-being while in care[.]" *In re White*, 303 Mich App at 714.

The trial court concluded that respondent did not demonstrate an interest in planning for the child as evidenced by her failure to attend any hearings or inform the DHHS of "her whereabouts." Respondent's cavalier attitude about the child's future and her decision to not be

involved in the termination proceedings support that respondent was not concerned with the child's well-being, which in turn supports that termination was in the child's best interests. See *id.* The trial court also noted that respondent failed to benefit from services during the prior termination proceedings, which likewise supports that termination was in the child's best interests. See *id.*

The trial court also compared the advantages of the child's current placement over placement with respondent. The trial court noted that the child's current placement was meeting all of his needs, and expressed doubt about whether respondent could do the same because she "appears incapable of meeting her own needs, including housing . . . and substance abuse." The advantages of the child's current placement over placement with respondent support that termination was in the child's best interests. See *In re Olive/Metts*, 297 Mich App at 41-42.

Lastly, the trial court addressed the child's need for permanency, stability, and finality. The trial court concluded that respondent's inability to provide a stable life for herself called into question her ability to provide stability for the child. Likewise, respondent's inability to address her problems over the course of over three years—beginning when PM was removed on June 4, 2014, and ending with the termination of her rights to ADH on November 14, 2017—created uncertainty about when respondent would be able to provide ADH any with degree of permanency.

For these reasons, even considering respondent's best-interest argument, we conclude that the trial court did not clearly err in finding by a preponderance of the evidence that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien