HODGE v PARKS

Docket No. 308726. Submitted December 4, 2013, at Detroit. Decided
    January 2, 2014, at 9:10 a.m.

Sheila Hodge brought an action in the Genesee Circuit Court, Family
    Division, against Darrell Parks, seeking a divorce. The court,
    Duncan M. Beagle, J., entered a judgment of divorce. Plaintiff
    appealed with regard to issues concerning the division of property,
    spousal support, and the marital debt. Defendant cross-appealed
    with regard to the property division.

The Court of Appeals *held*:

1. Plaintiff agreed at the trial that defendant could keep the
money remaining in a certain Raymond James account. That
consent constituted a waiver that eliminated any alleged error
underlying the award of the money in the account to defendant. In
any event, plaintiff offered no bases to challenge the trial courts'
determination.

2. The trial court erred as a matter of law by holding that the
postnuptial agreement between the parties could not be enforced.
A postnuptial agreement that seeks to promote a marriage by
keeping a husband and wife together may be enforced if it is
equitable to do so. The postnuptial agreement in this case was
intended to keep the marriage intact, not to encourage a separa-
tion or divorce.

3. The trial court erred by holding that a certain sailboat was
the separate property of defendant. The enforceable postnuptial
agreement provided that the sailboat was marital property. The
trial court erroneously invalidated the agreement. The holding
that the sailboat is the separate property of defendant is reversed
and the case is remanded to the trial court for a determination of
the proper equitable distribution of the sailboat.

4. The trial court's property division was fair and equitable.
The property division, except with regard to the sailboat, is
affirmed.

5. Defendant's claims that the trial court misclassified a mon-
etary transfer from plaintiff to her children as a gift and that the
divorce judgment was inequitable in favor of plaintiff lack merit.

Affirmed in part, reversed in part, and remanded.

1. HUSBAND AND WIFE — POSTNUPTIAL AGREEMENTS.

A couple that is maintaining a marital relationship may not enter into an enforceable contract that anticipates and encourages their future separation or divorce; postnuptial agreements that are calculated to leave one party in a much more favorable position to abandon the marriage will not be enforced.

2. HUSBAND AND WIFE — POSTNUPTIAL AGREEMENTS.

Postnuptial agreements are not invalid per se; a postnuptial agreement that seeks to promote a marriage by keeping a husband and wife together may be enforced when it is equitable to do so.

*Debra F. Donlan* for plaintiff.

*Xuereb Legal Group PC* (by *Joseph M. Xuereb*) for defendant.

Before: METER, P.J., and CAVANAGH and SAAD, JJ.

SAAD, J. In this divorce action, plaintiff appeals the trial court's order with regard to issues concerning property division, spousal support, and marital debt. Defendant cross-appeals the same order with regard to the property division. For the reasons stated hereinafter, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I. FACTS

Plaintiff and defendant were married in 1998, when plaintiff was 45 and defendant was 61 years old. Defendant has owned a steel business for over 40 years, while plaintiff worked for General Motors Corporation and also served as an officer of defendant's company. Their relationship soured in 2004, when plaintiff filed for divorce, but the parties reconciled after signing a postnuptial agreement that specified certain property divi-

sions and mandated that the parties receive marital counseling. But the reconciliation did not last and plaintiff filed this divorce action five years later.

The trial court entered an order in 2011 on the contested issues of property division, spousal support, and marital debt. Neither party is totally pleased with the order and each appeals some aspect of the property division. Plaintiff claims that the trial court: (1) erred when it found that the balance of defendant's Raymond James account (the "Raymond James account" or the "3177 account") was defendant's premarital asset, (2) erred when it held that a sailboat was the separate property of defendant, and (3) made an inequitable division of property. Defendant asserts that the trial court misclassified a monetary transfer from plaintiff to her children as a gift and that the property distribution was inequitable in plaintiff's favor.

We reverse the trial court's holding that the sailboat was the separate property of defendant. An enforceable postnuptial agreement provided that the sailboat was marital property. The trial court erroneously invalidated the agreement. We remand this issue to the trial court for a determination of the proper equitable distribution of the sailboat. We affirm the trial court's holding in all other respects and dismiss plaintiff's and defendant's remaining claims.

## II. ANALYSIS

### A. PLAINTIFF'S APPEAL

#### 1. THE RAYMOND JAMES ACCOUNT

In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property. *Cunningham v Cunning-*

*ham*, 289 Mich App 195, 200; 795 NW2d 826 (2010); *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Id.* Special deference is afforded to a trial court's factual findings that are based on witness credibility. *Id.* at 358. "This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable." *Id.* at 365 (citations omitted).

Plaintiff asserts that the trial court wrongly classified the Raymond James account as defendant's premarital asset and argues that it should be considered a marital asset. Her theory is one of free association: because plaintiff worked for defendant's business and the Raymond James account was used to fund defendant's business, her labor commingled with defendant's money to convert the Raymond James account into a marital asset. See *Cunningham*, 289 Mich App at 201 ("[m]oreover, separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property") (citations and quotation marks omitted).

As an initial matter, plaintiff waived this argument at trial and therefore cannot assert this claim on appeal. During cross-examination at the trial, plaintiff testified:

> *Q.* So, is it your position this $210,000 [in the 3177 account] is marital or premarital?
>
> *A.* I really don't know. I know we made a lot of money together, but —
>
> *Q.* No. I'm asking you are you asking the Court to divide this money?

*A. He can have that money.*

*Q.* He can have the $210,000. Okay.

*A.* But wasn't it worth $437,000 before this year?

*Q.* It was, but it's not now.

*A.* Well, it was $437,000 last year.

*Q.* Is there anything else you want to tell the Court before I ask you another question?

*A. I was just going to say the $437,000 he can have.*

*Q.* Okay, but there's not $437,000 there.

*A.* I don't know what he has.

\* \* \*

*Q. So, you're okay with him keeping what remains as this marital [sic] 3177 account, $210,000, and you're okay with him keeping the $229,000 in his IRA [individual retirement account], right?*

*A. Yes.* [Emphasis added.]

A party cannot stipulate with regard to a matter and then argue on appeal that the resulting action was erroneous. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 532; 695 NW2d 508 (2004). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *Cadle Co v Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009). Plaintiff agreed at the trial that defendant could keep the $210,000 remaining in the 3177 account. This consent constitutes a waiver that eliminates any alleged error underlying the award of the $210,000 in the account to defendant.

In any event, were we to address her claims, plaintiff's argument is not convincing. The Raymond James account functioned as a short-term borrowing device for

defendant's business, with defendant borrowing and repaying capital through withdrawals and deposits to the account. Plaintiff fails to show that defendant's actions constitute a commingling of assets—namely, she offers no authority that a properly accounted-for loan from, or repayment to, a premarital account transforms that premarital account into marital property. Nor has she demonstrated that her mere status as defendant's employee suffices to transform a premarital, business-related asset into martial property. A party cannot simply announce a position and expect the court to search for authority to sustain or reject that position. *State Treasurer v Sprague*, 284 Mich App 235, 243; 772 NW2d 452 (2009).[1]

Further, the trial court examined defendant's financial records and determined that defendant had fully accounted for all the money located in the Raymond James account at the time of the marriage.[2] Nor did the account's value appreciate during the marriage. Further, the trial court stressed defendant's age (74) and held that it would be inequitable to treat the premarital

---

[1] Although plaintiff suggests that defendant's Social Security income was commingled with the funds in the Raymond James account, plaintiff fails to develop an argument on this point or to identify evidence to support this contention. She has thus abandoned that issue by failing to brief it. *Id.*

[2] The Raymond James account was initially held with another financial organization that was subsequently purchased by Raymond James. On the date of the marriage, the predecessor account contained approximately $253,000—more than the $210,000 held in the account at the time of trial.

In addition, plaintiff notes that at one point before the trial, defendant was held in contempt for failing to return some funds that had been removed from the 3177 account. However, in its opinion and order issued after the trial, the court, after fully reviewing the financial records, determined that defendant had adequately accounted for all the money at issue. Again, plaintiff identifies no evidence to dispute this finding.

funds in the Raymond James account as marital prop-
erty when the court awarded plaintiff the premarital
funds in her retirement accounts. The trial court made
a thorough and sound analysis of this issue and plain-
tiff, who waived this issue, has offered no basis to
challenge its determination.

### 2. THE SAILBOAT

"This Court reviews de novo a trial court's interpre-
tation of a contract and its resolution of any legal
questions that affect a contract's validity, but any
factual questions regarding the validity of the con-
tract's formation are reviewed for clear error." *Wright v
Wright*, 279 Mich App 291, 297; 761 NW2d 443 (2008).
Under Michigan law, "a couple that is maintaining a
marital relationship may not enter into an enforceable
contract that anticipates and encourages a future sepa-
ration or divorce." *Id.* If the state were to enforce such
agreements, it would encourage separation or divorce,
which is not an appropriate public policy. *Id.*, citing
*Randall v Randall*, 37 Mich 563, 571 (1877). As such,
postnuptial agreements "calculated to leave [one party]
in a much more favorable position to abandon the
marriage" will not be enforced. *Wright*, 279 Mich App at
297.[3]

Nonetheless, "[p]ost-nuptial agreements are not in-

---

[3] The postnuptial agreement at issue in *Wright*, which the trial court
and the Court of Appeals found void, was particularly egregious:

In the case at bar, the trial court correctly determined that the
postnuptial agreement at issue was calculated to leave plaintiff in
a much more favorable position to abandon the marriage. The
contract plainly had, as one of its primary goals, defendant's total
divestment of all marital property in the event of a divorce. The
couple was not separated at the time and had never separated
during the marriage, but plaintiff filed for divorce roughly eight
months after defendant signed the agreement. [*Id.*]

valid *per se*," because some postnuptial agreements may be intended to promote harmonious marital relations and keep the marriage together. *Rockwell v Estate of Rockwell*, 24 Mich App 593, 596–597; 180 NW2d 498 (1970). In such situations, "[t]he public policy objection to post-nuptial contracts pointed out by the Court in *Randall* . . . . does not arise . . . ." *Id.* at 597. If a post-nuptial agreement seeks to promote marriage by keeping a husband and wife together, Michigan courts may enforce the agreement if it is equitable to do so.

Here, plaintiff seeks to enforce a handwritten agreement that the parties signed in 2005 when they agreed to dismiss their prior divorce action filed in 2004. It states in its entirety:

> Ground Rules (30 days – 60 day [sic]) 5-6-05
>
> 1) Intensive counseling (joint) w/counselor of our mutual choice (David Hall) (Amy Taylor)
>
> 2) Avalanche – joint title. Will be brought back to house.
>
> 3) *Boat – ours equally to be used by both without stating "it is mine, because I pd for it." The boat is <u>our</u> boat owned by both Darrell & Sheila. Should be titled by both.*
>
> 4) Sit together to do a budget – putting on table all assets between both.
>
> 5) Kids not to interfere w/our marriage or relationship – to allow us to grow as a couple.
>
> 6) Treat each other w/love & respect and no rehashing of old issues. No fowl [sic] language directed at each other period.
>
> 7) Both names on house – joint-ownership. Add'l assets to be added later.
>
> By: Darrell Parks [and] Sheila Hodge. [Emphasis added; underlining in original.]

This agreement is thus akin to the one described in *Rockwell*—it is intended to keep the marriage intact,

not to encourage a separation. Nothing in the agreement itself or the record suggests that the parties contemplated a separation in the near future when they signed the agreement. On the contrary, the agreement was made in connection with the dismissal of their prior divorce action. And the agreement reflects the parties' intent to reconcile, by requiring them to engage in intensive counseling, treat one another with love and respect, and not allow their respective children to interfere with their marriage or relationship.

Further, unlike the agreement in *Wright*, nothing in this document encourages a separation by leaving one party in a much more favorable position if the marriage ended. In fact, the agreement is relatively balanced: it effectively treats *both* defendant's premarital sailboat and plaintiff's premarital house as marital assets and requires *both* parties to work together to improve their relationship, marriage, and finances. The trial court thus erred, as a matter of law, when it held that the agreement could not be enforced.

Accordingly, we reverse the award of the sailboat to defendant and remand the case to the trial court to determine an equitable disposition of this marital asset. See *Cunningham*, 289 Mich App at 201 ("[o]nce a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances"); *Woodington*, 288 Mich App at 365 ("[w]hen dividing marital property, a court is not required to award mathematically precise shares").

### 3. THE PROPERTY DIVISION

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of

property in light of all the circumstances. The trial
court need not divide the marital estate into math-
ematically equal portions, but any significant departure
from congruence must be clearly explained." *Berger v
Berger*, 277 Mich App 700, 716–717; 747 NW2d 336
(2008) (citations omitted).[4] In making its determina-
tion, the trial court may consider "[a] party's attempt to
conceal assets . . . but it is only one of many facts that
the court must weigh. Further a judge's role is to
achieve equity, not to 'punish' one of the parties. An
attempt to conceal assets does not give rise to an
automatic forfeiture." *Sands v Sands*, 442 Mich 30,
36-37; 497 NW2d 493 (1993). Separate assets may be
invaded when a party demonstrates that the property
awarded is insufficient for his or her suitable mainte-
nance and support, or when a party significantly assists
in acquiring or growing the other party's assets. *Skelly
v Skelly*, 286 Mich App 578, 582; 780 NW2d 368 (2009),
citing MCL 552.23 and MCL 552.401.

We are not left with a definite and firm conviction
that the trial court's ultimate property division was
inequitable. To the contrary, the trial court's prop-
erty division appears equitable. Though plaintiff suf-
fers from multiple sclerosis (MS), earns income only

---

[4] *Berger* goes on to list the factors a trial court "may consider . . . in
dividing the marital estate":

   (1) the duration of the marriage, (2) the contributions of the
parties to the marital estate, (3) the age of the parties, (4) the
health of the parties, (5) the life situation of the parties, (6) the
necessities and circumstances of the parties, (7) the parties'
earning abilities, (8) the parties' past relations and conduct, and
(9) general principles of equity. When dividing marital property,
a trial court may also consider additional factors that are
relevant to a particular case. The trial court must consider all
relevant factors but not assign disproportionate weight to any
one circumstance. [*Berger*, 277 Mich App at 717 (citations and
quotation marks omitted).]

from Social Security disability payments, and has
debts totaling $217,000, her debt is comprised prima-
rily of her mortgage and home equity loan of
$160,000, which she obtained herself. Further, plain-
tiff has a pension, a 401(k) account, and an IRA, the
combined *premarital* portions of which amount to
$446,000. Plaintiff is only required to divide with
defendant the *marital* portions of those retirement
assets, which comprise an additional $449,000. And,
as already discussed, plaintiff is also entitled on
remand to an equitable distribution of the sailboat,
which will further increase the amount of money she
receives from the property division.[5]

Defendant is in his mid-70s and testified that the
financial condition of his business is the worse that it
has been in 40 years. He claimed that his only current
income is from Social Security and that he has
approximately $44,000 in credit card debt. Although
the trial court concluded that defendant's business
had minimal or no value—due to the depressed
economy and the Internal Revenue Service's claim for
$200,000 in back taxes, penalties, and interest for
prior tax years—the court nonetheless reserved the
issue of spousal support. The court also ordered
defendant to thereafter submit his personal and
business income tax returns in 2012, 2013, and 2014
to show whether the business improves. And the
court awarded plaintiff attorney fees in the amount of
$7,500, to be paid by defendant to plaintiff's counsel.

---

[5] Indeed, to the extent plaintiff's argument on this issue hinges on the
fact that the trial court treated the sailboat as defendant's separate
asset—plaintiff's brief refers to the sailboat as "the parties' most prized
possession"—our conclusion that the sailboat is actually a marital asset
to be distributed equitably on remand arguably renders moot plaintiff's
argument that the trial court's overall property division is inequitable.
See *Skelly*, 286 Mich App at 585.

On balance, far from being inequitable, the overall property division seems quite fair.[6] We accordingly affirm the trial court's overall property division, save for its holding regarding the sailboat.[7]

### B. DEFENDANT'S CROSS-APPEAL

Defendant's claims that the trial court misclassified a monetary transfer from plaintiff to her children as a gift and that the divorce judgment was inequitable in plaintiff's favor lack merit. The trial court did not clearly err when it found that the funds contributed by plaintiff to her children constituted a gift. Plaintiff assisted her sons in the 2002 purchase of a Florida condominium, by making the $50,000 down payment. Plaintiff obtained the $50,000 through a loan against her 401(k) account—which existed before the marriage—and repaid the loan with money she earned during the marriage. One of plaintiff's sons testified that he and his brothers formed a corporation to manage the condominium

[6] Our conclusion is not altered by defendant's purported transfer of some assets to his children. The trial court found that both parties had sometimes failed to be entirely honest in the years leading up to and during this divorce action, and the court listed specific examples of each party's conduct that sought to conceal information or assets from the other party. Because both parties engaged in this conduct, and because concealment does not require automatic forfeiture, *Sands*, 442 Mich at 36–37, defendant's asset transfers do not make the trial court's property division inequitable.

[7] Plaintiff fails to establish that defendant's separate assets should be invaded, because she is unable to show that the property awarded is insufficient for her suitable maintenance and support. She receives Social Security disability income, will receive an equitable share of the sailboat on remand, and possesses equity in her home, vacant land in Charlevoix, two boat slips, a classic Corvette, personal property including jewelry, and over one-half million dollars in retirement funds. In addition, it is possible she will receive spousal support. Nor has plaintiff demonstrated that she significantly assisted in the acquisition and growth of defendant's separate assets.

and that they do not intend to pay their mother back. The trial court therefore classified the monetary transfer as a gift (not a loan) and found that plaintiff does not own the condominium.

Defendant's arguments that the trial court's decision on this matter is improper are unconvincing. Again, the trial court thoroughly analyzed this issue, noting that if plaintiff *did* own the condominium, general principles of equity would dictate that it should be awarded to her. Defendant has failed to establish that such a disposition is inequitable— plaintiff suffers from MS and cannot work, has significant debts, and claims Social Security disability benefits are her only income. Her primary assets are retirement funds for which she suffers a penalty for early withdrawals. Under the settlement, defendant retains significant assets, including the $210,000 in his Raymond James account, other accounts containing premarital funds, his equitable share of the sailboat to be determined on remand, and his steel business, which, although currently of minimal value, has the potential to improve as economic conditions change. Although defendant contends that plaintiff attempted to conceal the purchase of the Florida condominium from him, as noted earlier, the court found that defendant engaged in similar deceptive behavior regarding other assets. Therefore, the trial court made an equitable disposition regardless of the Florida condominium.

### III. CONCLUSION

The part of the trial court's order holding that the sailboat is the separate property of defendant is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion with

regard to the disposition of the sailboat. In all other respects, the trial court's order is affirmed. We do not retain jurisdiction.

METER, P.J., and CAVANAGH, J., concurred with SAAD, J.