*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER THOMAS WINTERS,

        Plaintiff-Appellant,

v

KATHRYN LYNN WINTERS,

        Defendant-Appellee.

UNPUBLISHED
February 15, 2024

No. 366065
Bay Circuit Court
Family Division
LC No. 21-007314-DM

Before: LETICA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's judgment of divorce dividing the marital property and awarding defendant sole legal and physical custody of the parties' three minor children, AW, EW, and GW. We affirm.

## I. BACKGROUND

The parties were married in 2015 and separated on September 27, 2021. Plaintiff filed for divorce on September 29, 2021. The parties had three minor children during their marriage. Plaintiff often worked long hours outside of the home. Defendant did not work and was the children's primary caretaker. Defendant removed the children and took them with her when she moved out of the marital home on September 27, 2021. During the divorce proceedings, defendant moved for temporary custody, parenting time, child support, and third-party restrictions. Defendant sought joint legal custody but primary physical custody. Defendant additionally asked that restrictions to be placed on the children's contact with plaintiff's new girlfriend. In its recommendation, the referee agreed with defendant. The referee also recommended that plaintiff receive parenting time every weekend, except for the first weekend of each month, from Friday at 6:00 p.m. to Sunday at 6:00 p.m. The trial court adopted the referee's recommendation over plaintiff's objection and after a de novo hearing. Plaintiff on appeal does not challenge these prior proceedings.

The trial court scheduled a bench trial to address custody as well as division of assets. Both parties desired sole legal and physical custody of the children. The referee submitted a report and recommendation in which it agreed with defendant that she should receive sole legal and physical

custody. The referee noted plaintiff's allegations that defendant had abused the children, but the referee did not find these allegations credible. The referee noted defendant's allegations that plaintiff had physically, verbally, and sexually abused her, and the referee found these allegations credible. Analyzing the best-interest factors under MCL 722.23, the referee determined that seven factors favored defendant, four favored neither party, and no factor favored plaintiff. This recommendation was admitted into evidence at the bench trial without objection.

Regarding the distribution of marital assets, defendant sought 50% of certain proceeds from two financial accounts: a Robinhood account and a Coinbase account. There was no dispute in this case that plaintiff maintained and controlled the family finances and that all financial accounts and credit cards were held in his name. Testimony and bank records showed that, after filing for divorce, plaintiff transferred $15,000 out of a bank account and into the Robinhood account before later transferring $16,643 back from the Robinhood account into the bank account. Defendant sought 50% of this $16,643. Testimony and bank records also showed that plaintiff transferred thousands of dollars from the bank account into the Coinbase account. However, at the time of the bench hearing, the Coinbase account had a balance of only $5, and plaintiff claimed that he did not know where this missing money was. Defendant sought half of the amounts deposited into the Coinbase account.

After filing for divorce, plaintiff obtained a loan from Best Egg. After the necessary fees, this amounted to approximately $38,000. There was also approximately $50,000 in credit card debt. Testimony from the parties demonstrated that plaintiff controlled the credit cards, that he made thousands of dollars of leisure purchases with the cards, that defendant had to ask permission to make any purchases with the cards, and that defendant only used the cards for family necessities and not for any leisure purchases. Plaintiff acknowledged that he had received $900 per month between October and December 2021 for a total of $2,700 in child tax credits and that he had not sent any of this money to defendant despite the children living with her. Defendant sought 50% of this amount as well as the ability to claim the children on her taxes for the future. Defendant also sought attorney fees, which amounted to nearly $7,000.

Plaintiff testified that defendant had "beat" EW for spilling water on the floor. He acknowledged that he never contacted CPS about this incident. Defendant conceded that she had accidentally hit EW on one occasion. Based on the referee's recommendation and defendant's testimony, defendant essentially meant to spank EW, missed, accidentally hit EW's back with an open hand, and left a small bruise. Defendant felt extremely guilty over this incident and took steps to ensure it never occurred again. She sought counseling and parenting classes to learn more effective ways of disciplining her children. By the time of the bench trial, she had been in counseling for over a year and used songs and time-out methods for punishing the children. There was no dispute that no CPS complaint had ever been filed against defendant. Apart from this singular incident, plaintiff brought forth no other allegations of abuse.

The trial court awarded defendant sole legal and physical custody. Evaluating the best-interest factors under MCL 722.23, the trial court found that Factors A, B, C, E, H, J, and K favored defendant while Factors D, F, and G favored neither party. No factors favored plaintiff. The trial court did not interview the children for their preferences under Factor I, nor did it consider any other factors under Factor L. The trial court agreed with the referee that the incident with EW was an "anomaly" and that defendant had taken the necessary steps to ensure that she properly

disciplined the children in the future. The trial court similarly agreed with the referee concerning defendant's allegations of abuse from plaintiff throughout the marriage. Given this abuse and the complete control and "domination" that plaintiff exerted over defendant during the marriage, the trial court expressed concern over the parties' ability to communicate and cooperate with each other, thereby prompting it to award defendant sole custody. The trial court also expressed concern with plaintiff's new girlfriend and how this would affect the children. The trial court agreed with the referee that plaintiff essentially sought to fully replace defendant with the girlfriend in the children's lives.

Regarding the distribution of assets, the trial court awarded defendant 50% of both the $16,643 from the Robinhood account and $2,000 from the Coinbase account. Similarly, the trial court awarded defendant 50% of the $2,700 in child tax credits that plaintiff had received, and it gave defendant the ability to claim the children on future tax returns. Furthermore, the trial court ordered that each party would be responsible for any debt in their names, which meant that plaintiff was solely responsible for both the Best Egg loan and credit card debt. Finally, in lieu of dividing up the bank account, the trial court awarded defendant $2,500 in attorney fees.

After the judgment of divorce was entered, defendant moved to hold plaintiff in contempt for failing to comply with the judgment of divorce. After plaintiff continued his noncompliance, the trial court issued an arrest warrant, plaintiff was arrested and arraigned, and a deal was reached for compliance with the judgment of divorce. Plaintiff was subsequently released. This appeal followed. Plaintiff, appearing *in propria persona*, challenges the award of sole legal and physical custody to defendant, as well as the division of assets and award of attorney fees.

## II. ANALYSIS

### A. CHILD CUSTODY

#### 1. STANDARD OF REVIEW

"In a child custody dispute, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pennington v Pennington*, 329 Mich App 562, 569-570; 944 NW2d 131 (2019), quoting MCL 722.28. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. at 570. Additionally, "[a]n abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Id*. (quotation marks and citation omitted). On the other hand, "[q]uestions of law are reviewed for clear legal error," which occurs when the "trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted).

#### 2. DISCUSSION

Plaintiff argues that the trial court abused its discretion by granting defendant sole legal and physical custody. We disagree.

Before awarding custody, the trial court must first determine if the child has an established custodial environment with either of the parents. *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011). If the trial court determines that an established custodial environment exists, "the trial court must determine whether the requested change would affect the established custodial environment of the child and, dependent on that outcome, ascertain the proper burden of proof to be employed." *Marik v Marik*, 325 Mich App 353, 362; 925 NW2d 885 (2018). If the requested change affects the child's custodial environment, "the party seeking the change must demonstrate by clear and convincing evidence that the change is in the child's best interests." *Id*. If the requested change does not affect the child's custodial environment, "the proponent of the change need only demonstrate by a preponderance of the evidence that the requested change is in the child's best interests." *Id*. In the present case, the trial court determined that the children had an established custodial environment with both parties, and accordingly, it utilized the clear and convincing evidence standard. Neither party challenges this determination.

Once a trial court has determined whether an established custodial environment exists, it must analyze the best-interest factors set forth in MCL 722.23. *Marik*, 325 Mich App at 362. There are twelve factors, and a trial court must examine the "sum total" of these factors. MCL 722.23. These factors are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (f) The moral fitness of the parties involved.
>
> (g) The mental and physical health of the parties involved.
>
> (h) The home, school, and community record of the child.
>
> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.
>
> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively

for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

As previously discussed, the trial court determined that Factors A, B, C, E, H, J, and K favored defendant while Factors D, F, and G, favored neither party. The trial court did not consider the children's preferences because of their young age (Factor I), and it did not consider or any other factors under Factor L.

On appeal, plaintiff fails to explicitly challenge or even reference any of these factors. Instead, he appears to argue that the trial court should have awarded him sole legal and physical custody because defendant admitted that she hit the children, the children had diaper rashes when in defendant's care, the children should continue living in the same home they lived in when the parties were married, and the children have expressed their desire to live with plaintiff. It appears that plaintiff is challenging the trial court's findings. However, the trial court's determinations were amply supported by the evidence.

Plaintiff's allegations of abuse stemmed from the single incident with EW; he provided no evidence or even allegations of any other potential abuse. The trial court found defendant's testimony credible and concurred with the referee's recommendation, which determined that this was essentially an accident, not evidence of abuse, and that defendant took necessary steps to avoid such an accident from occurring in the future. Additionally, the referee noted that there was only one occasion in which plaintiff had supposedly found a diaper rash on GW. Such singular incidents do not evidence a pattern of abuse or lack of care by defendant.

Plaintiff argues that the children prefer to live with him. The trial court determined that the children were too young to express their reasonable preferences. We discern no error in this finding because, at the time of the bench trial, the children were each under the age of seven. Regarding plaintiff's argument that the children should continue living in the home that they grew up in, this ignores the plethora of evidence showing that defendant was far more involved with the children than plaintiff. By his own testimony, plaintiff acknowledged that he had worked long hours away from the home and that, in contrast, defendant did not work and had been the primary caretaker of the children. Defendant took the children to their appointments and was involved with their schooling, speech therapy, and counseling. Plaintiff had minimal involvement, and accordingly, the children's regular day-to-day environment was primarily with defendant. This was further reinforced by the fact that, throughout the divorce proceedings, the children lived with defendant and her parents rather than plaintiff. By the time of the trial court's decision, the children had primarily resided with defendant for approximately one and a half years.

The trial court found that seven factors favored defendant while none favored plaintiff, and, as previously discussed, plaintiff has failed to analyze any of the other factors. By failing to

challenge any of the other factors or findings by the trial court, plaintiff has conceded to their being proper. "[A] person acting *in propria persona* should be held to the same standards as members of the bar." *Totman v Sch Dist of Royal Oak*, 135 Mich App 121, 126; 352 NW2d 364 (1984).[1] See also *Baird v Baird*, 368 Mich 536, 539; 118 NW2d 427 (1962). We have discerned no clear error in the trial court's findings on those matters raised by plaintiff on appeal. Accordingly, plaintiff has failed to show that the trial court's grant of sole legal and physical custody to defendant was an abuse of discretion.

## B. PROPERTY DIVISION

### 1. STANDARD OF REVIEW

The trial court's factual findings on the marital property's division are reviewed for clear error. *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). Clear error occurs "when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). "If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). See also *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). Given that the trial court's "dispositional ruling is an exercise of discretion[,] . . . the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable." *Sparks*, 440 Mich at 152. See also *Woodington*, 288 Mich App at 355-356. Questions of law are reviewed de novo. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010).

### 2. DISCUSSION

Plaintiff challenges the trial court's division of the Robinhood and Coinbase accounts as well as the child tax credits. Additionally, plaintiff challenges the award of attorney fees and the decision to make plaintiff solely responsible for the Best Egg loan and credit card debt. We discern no abuse of discretion or inequitable distribution in the trial court's division of assets.

"The overarching goal of a trial court's property distribution in a divorce action is equity." *Elahham v Al-Jabban*, 319 Mich App 112, 121; 899 NW2d 768 (2017). Although the trial court is not required to divide the marital property equally, the property "must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs." *Id*. (quotation marks and citation omitted). The trial court must consider the following factors if they are relevant to the case:

---

[1] Published decisions of the Court of Appeals issued on or after November 1, 1990 are precedentially binding. MCR 7.215(J)(1). Although this Court is "not strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990, . . . they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Id*. (quotation marks and citation omitted).]

Furthermore, a trial court may consider any additional relevant factors. *Id*. Although the trial court is required to consider "all relevant factors," it is prohibited from giving "disproportionate weight to any one circumstance." *Id*. at 122 (quotation marks and citation omitted). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201. "The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Id*. at 201-202.

Plaintiff argues that defendant should not have received half of the $2,700 child tax credit for 2021 because he and defendant were not separated for the majority of the year. However, plaintiff ignores the fact that the trial court's award was based only on the months of October, November, and December, not the entire year. Plaintiff received $900 for each of these months. The parties were separated during these three months, and the children lived with defendant while plaintiff had minimal parenting time. Accordingly, plaintiff's position has no merit. Plaintiff also argues that he should have received future child tax exemptions instead of defendant. However, defendant was awarded primary physical custody, and plaintiff received minimal parenting time throughout the year. Therefore, defendant would have the children throughout the vast majority of the year and would be responsible for the majority of their day-to-day expenses. We discern no clear error.

Plaintiff challenges defendant's receipt of 50% of the $16,643 from the Robinhood account and the $2,000 deposited into the Coinbase account. He argues that, because these funds were moved in October 2021, which was *after* the divorce filing, defendant was not entitled to them. However, it was immaterial that plaintiff moved these funds after the divorce filing. Plaintiff has never disputed that these were assets acquired or earned during the marriage. As a result, these assets were marital property, and defendant was entitled to her share of them. See *Cunningham*, 289 Mich App at 201. The trial court determined that defendant should receive half, and this was an equitable distribution under the circumstances. There was no dispute that plaintiff controlled the finances, that defendant had been a homemaker, and that defendant had no assets in her name. This backdrop is critical to understanding the trial court's division of financial assets.

This backdrop also supports the trial court's decision to make plaintiff solely responsible for the credit card debt. Testimony showed that plaintiff managed the cards, that they were solely in his name, and that he made thousands of dollars' worth of various leisure purchases. In contrast, defendant testified that she had to ask permission to obtain and use the cards, which was rare, and that, when she did, she only made purchases related to family needs. She also testified that she had been completely unaware of how much credit card debt had been incurred during the marriage. In other words, the evidence showed that the debt was mostly due to plaintiff's actions, and, given the financial disparity between the parties, it was not clear error to make him solely responsible for his spending habits.

-7-

Plaintiff contends that defendant should have been partially responsible for the Best Egg loan, but he ignores the fact that this was taken out in his own name and *after* he filed for divorce. Plaintiff used this loan for his own purposes, and he failed to show any benefit to defendant from this loan. Furthermore, prior to the bench trial, the trial court ordered plaintiff to provide documentation about this loan to defendant. The trial court ordered that, if plaintiff failed to do so, the loan would be treated as a nonmarital asset. There is no dispute that plaintiff failed to comply with this order. Accordingly, based on plaintiff's noncompliance, the trial court properly considered this to be a nonmarital asset.

Finally, plaintiff appears to argue that defendant should not have received $2,500 in attorney fees because some of the attorney fees were incurred prior to his filing for divorce. Our review of defendant's documentation of attorney fees shows that $3,500 was incurred on September 27, 2021, which was the date of the parties' separation. Defendant undoubtedly retained counsel in preparation for the coming divorce filing. Regardless, the trial court awarded the $2,500 in lieu of dividing up the bank account, and the total amount of attorney fees was nearly $7,000. In other words, the trial court struck a compromise by ordering plaintiff to pay only a fraction of the total fees in exchange for allowing him to retain the full amount of his bank account. This was not an inequitable division under the circumstances.

Therefore, plaintiff has failed to show that any of the trial court's findings were clearly erroneous. The evidence established that plaintiff dominated the relationship and controlled the family finances. In contrast, defendant was a homemaker with no assets or accounts in her name. Given the financial disparity between the parties and the fact that the children would be residing primarily with defendant moving forward, we are not convinced that the divisions were unfair and unequitable.

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Brock A. Swartzle