*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTINE SWITZER,

        Plaintiff-Appellant,

v

CHARLIE CHESTER SWITZER,

        Defendant-Appellee.

UNPUBLISHED
February 11, 2025
9:53 AM

No. 367798
Osceola Circuit Court
LC No. 22-016436-DO

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

In this divorce action, plaintiff, Christine Switzer, appeals by right the judgment of divorce classifying and distributing the parties' marital property. On appeal, she argues that the trial court clearly erred by classifying real property referred to as the northern farm parcel as a separate asset and awarding it to defendant, Charlie Switzer. She also argues that the trial court clearly erred by inequitably distributing the parties' marital assets. We hold that the trial court did not clearly err by classifying the northern farm parcel as a separate asset and awarding it to Charlie. And with the exception of the parties' household items and furnishings, the trial court did not clearly err in its distribution of the parties' marital assets. We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In November 1995, Christine and Charlie married. In August 2022, Christine filed a complaint for divorce. She alleged that the parties' marital relationship deteriorated and sought a divorce judgment consisting of an equitable division of the parties' marital assets. In September 2022, Charlie answered the divorce complaint. He admitted that the parties' marital relationship deteriorated and likewise sought a divorce judgment consisting of an equitable division of the parties' marital assets.

In April 2023, Christine and Charlie filed their trial briefs. They addressed their assets, their liabilities, and aspects of their relationship. Namely, they stated that they owned vehicles, a camper, a trailer, farming equipment and tools, lawncare equipment, household furnishings, and four dogs. They each maintained bank accounts and a 401(k) account, and Christine had a Parent

PLUS loan[1] in her name. They also had interests in three parcels of real property located in Paris, Michigan. The first parcel, which they jointly owned, was less than two acres in size and contained their marital home. The second parcel, which they jointly owned subject to mutual farming and access rights with an adjacent parcel, was roughly 40 acres in size, contained a farmhouse and two barns, and comprised the northern farm parcel. The third parcel, which Charlie owned with his son and brother, was roughly 40 acres in size and contained a hunting cabin without plumbing or electricity. Christine also claimed that Charlie had a history of substance abuse, criminal behavior, and domestic violence. She explained that Charlie was incarcerated in relation to charges stemming from his unlawful entry and attempted installation of an eavesdropping device in her home.

After a May 2023 bench trial, the trial court issued a written opinion setting forth its findings of fact and conclusions of law. It found that the parties each contributed to the marital estate to the best of their ability. It also found that the parties had the ability to work and maintain comfortable standards of living. It recognized that Charlie was incarcerated, and Christine was a victim of his criminal activity.

The trial court also classified and distributed the parties' marital property in light of its findings. It began by addressing the parties' personal property. It awarded Charlie the farming equipment, brush hog, vehicle trailer, camper, and tools. It awarded Christine the Polaris side-by-side vehicle, Honda four-by-four vehicle, riding lawn mower, push lawn mower, and patio furniture. It also awarded Christine the dog she took when the parties separated and awarded Charlie the remaining three dogs that he kept. It awarded the parties the money in their respective bank accounts and 401(k) accounts. It awarded Christine the full value of her accrued leave time from work. It also awarded the parties their respective vehicles subject to any outstanding debts. It held the issue of spousal support in abeyance.

The trial court proceeded to address the parties' real property and liabilities. It classified the marital home and surrounding 1.48-acre parcel as marital property and awarded it to Charlie on the condition that he pay Christine for her equal share of equity within six months. It found the evidence insufficient to determine whether Christine removed her equal share of furnishings from the marital home and directed the parties to keep the furnishings in their possession. It classified the parties' interest in the northern farm parcel as separate property and awarded it to Charlie. It

reasoned that Charlie (and other members of his family) had an interest in the northern farm parcel before the parties married, and Christine's contributions were not sufficient to convert it marital property. The trial court also awarded Charlie the hunting property without attributing value to it given the lack of evidence presented. Regarding the parties' liabilities, the trial court classified the Parent PLUS Loan as a separate obligation because Charlie did not sign the loan documents or agree to be responsible for it. It concluded that Christine was solely responsible for the loan.

---

[1] A Parent PLUS student loan is a government loan for education expenses available to parents of dependent undergraduate students. See Federal Student Aid, *Glossary*, <https://studentaid.gov/help-center/answers/topic/glossary/articles> (accessed August 5, 2024).

This appeal followed.

## II. SEPARATE PROPERTY

Christine argues that the trial court clearly erred by classifying the northern farm parcel as a separate asset and awarding it to Charlie. We disagree.

### A. SEPARATE PROPERTY CLASSIFICATION

"In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010) (citation omitted). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id*. (citation omitted). "The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Id*. at 201-202 (citations omitted). "The actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Id*. at 209.

This Court reviews for clear error a trial court's factual findings regarding whether a particular asset qualifies as marital or separate property. *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). Factual findings are clearly erroneous if the reviewing court "is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted). "This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses." *Johnson v Johnson*, 276 Mich App 1, 11; 739 NW2d 877 (2007) (quotation marks and citation omitted).

Charlie acquired his interest in the Switzer farm in 1988—roughly seven years before the parties married in 1995. He testified that members of the Switzer family first acquired the Switzer farm in 1849. Christine acquired her interest in the Switzer farm in 1998. That year, members of the Switzer family divided the Switzer farm, conveying the northern farm parcel to the parties and the southern farm parcel to Charlie's brother and sister-in-law. Those same members of the Switzer family encumbered the northern and southern farm parcels with mutual farming and access rights, essentially entangling the two brothers' (and two couples') property rights. Charlie testified that the encumbrances were meant to discourage future conveyances of either parcel. Christine and Charlie agreed that they never resided in the farmhouse on the northern farm parcel and instead resided in a manufactured home on a separate, adjacent parcel. And, as addressed in greater detail in Part II(B) of this opinion, the evidence indicated that Charlie performed the majority of the farm labor on the northern farm parcel during the parties' marriage.

In light of these circumstances, we are not left with a definite and firm conviction that the trial court mistakenly classified the northern farm parcel as a separate asset. Although the parties had a joint interest in the northern farm parcel, Charlie acquired his interest in the Switzer farm before the parties married, members of the Switzer family encumbered the northern farm parcel in an attempt to discourage future conveyances, the parties never resided on the northern farm parcel, and Charlie performed the majority of the farm labor on the northern farm parcel during the parties'

marriage. The pertinent inquiry, then, is whether the trial court clearly erred by declining to distribute the northern farm parcel as a separate asset.

## B. SEPARATE PROPERTY DISTRIBUTION

"Generally, assets earned by a spouse during the marriage are properly considered part of the marital estate and are subject to division, but the parties' separate assets may not be invaded." *Korth v Korth*, 256 Mich App 286, 291; 662 NW2d 111 (2003) (citations omitted). "However, a spouse's separate estate can be opened for redistribution when one of two statutorily created exceptions is met." *Id*. (quotation marks and citation omitted). The first exception, found in MCL 552.23(1), "permits the invasion of a spouse's separate assets when, after the division of the marital assets, the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party." *Korth*, 256 Mich App at 291 (quotation marks, citation, and ellipsis omitted). The second exception, found in MCL 552.401, permits the invasion of a spouse's separate assets "when the other spouse contributed to the acquisition, improvement, or accumulation of the property." *Korth*, 256 Mich App at 292 (quotation marks and citation omitted). Under the second exception, "[w]hen one significantly assists in the acquisition or growth of a spouse's separate asset, the court may consider the contribution as having a distinct value deserving of compensation." *Reeves v Reeves*, 226 Mich App 490, 495; 575 NW2d 1 (1997). If the second exception applies, the trial court may distribute the separate property "as appears to the court to be equitable under all the circumstances of the case . . . ." MCL 552.401.

This Court assesses the trial court's marital property division by first reviewing the trial court's findings of fact. *Cassidy v Cassidy*, 318 Mich App 463, 476-477; 899 NW2d 65 (2017). "Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Id*. at 477. Factual findings are clearly erroneous if the reviewing court "is left with the definite and firm conviction that a mistake has been made." *Hodge*, 303 Mich App at 555 (quotation marks and citation omitted). "If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Cassidy*, 318 Mich App at 477. "The dispositional ruling is discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable." *Id*.

Christine testified that she contributed to the improvement of the northern farm parcel by performing farm labor, assisting with a rental home venture, and maintaining the farmhouse on the property. She stated that she performed farm labor by picking up hay bales, caring for livestock, and maintaining fences. She also stated that she assisted with the rental home venture by locating tenants, collecting rent, and cleaning when tenants moved out. She further stated that she maintained the farmhouse on the property by painting portions of its interior, cleaning up garbage in the yard, and occasionally mowing the lawn.

Charlie, in contrast, testified that Christine overstated her contributions to the improvement of the northern farm parcel. He stated that he performed almost all of the farm labor by cutting and baling hay, planting and harvesting crops, caring for livestock, maintaining fences, and repairing farm equipment. Charlie's brother similarly testified that he did not witness Christine performing any farm labor other than picking up hay bales. Charlie also stated that he assisted with the rental home venture by regularly collecting rent from tenants. He stated that he improved the northern farm parcel by hiring a contractor to repair the farmhouse exterior siding, install a

-4-

new barn roof, and paint the exterior of a barn. He further stated that he personally installed new flooring in the farmhouse, painted its interior, installed a new septic tank, renovated the master bedroom and bathroom, and regularly mowed the lawn. He also stated that he contributed to the property tax payments for the entire Switzer farm.

In light of these circumstances, we are not left with a definite and firm conviction that the trial court inequitably awarded the northern farm parcel to Charlie. The record reflects that Charlie's contributions to the northern farm parcel significantly outweighed Christine's. And to the extent that the trial court based its determination on the credibility of the witnesses, it is entitled to special deference. See *Johnson*, 276 Mich App at 11.

We are cognizant of Christine's argument that Charlie improved the northern farm parcel using marital funds such that she should have been compensated for its corresponding heightened value. Yet, the parties agreed that they maintained separate bank accounts throughout all but the beginning of their marriage. And Charlie testified that he improved the northern farm parcel using funds from his personal bank account. He also stated that he made recent improvements to the northern farm parcel using funds he withdrew from his 401(k) retirement account. Because the parties were each awarded their respective bank accounts and 401(k) retirement accounts, we are not left with a definite and firm conviction that Charlie's receipt of the northern farm parcel resulted in an inequitable property division.

III. MARITAL PROPERTY DISTRIBUTION

Christine argues that the trial court clearly erred by inequitably distributing the parties' marital assets. With the exception of the parties' household items and furnishings, we disagree.

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008) (citation omitted). "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717 (citations omitted). Trial courts may consider the following factors when dividing the marital estate:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id*. (citations omitted).]

Trial courts may also consider additional factors relevant to the particular case but may not "assign disproportionate weight to any one circumstance." *Id*. (quotation marks and citation omitted).

This Court assesses the trial court's marital property division by first reviewing the trial court's findings of fact. *Cassidy*, 318 Mich App at 476-477. "Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Id*. at 477. Factual findings are clearly erroneous if the reviewing court "is left with the definite and firm conviction that a mistake has been made." *Hodge*, 303 Mich App at 555 (quotation marks and citation omitted). "If the trial court's findings of fact are upheld, this Court must decide

whether the dispositive ruling was fair and equitable in light of those facts." *Cassidy*, 318 Mich App at 477. "The dispositional ruling is discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable." *Id*.

## A. THE MARITAL HOME

Christine first argues that the trial court clearly erred by undervaluing the marital home, resulting in an inequitable distribution with respect to that asset. We disagree.

In cases where marital assets are valued between divergent estimates given by expert witnesses, the trial court has great latitude in arriving at a final figure. *Pelton v Pelton*, 167 Mich App 22, 26; 421 NW2d 560 (1988). Indeed, the trial court had the best opportunity to view the demeanor of the witnesses and weigh their credibility. *Id*.

Here, Christine's expert witness testified that he appraised the marital home and concluded that its fair market value was $173,000. He opined that the marital home and surrounding 1.48-acre parcel of property was encumbered by mutual farming and access rights among the northern and southern farm parcels. He also opined that the encumbrance could impact the value of the marital home but he did not have market data to reach an opinion regarding the extent of any impairment.

Charlie's expert witness testified that he also appraised the marital home. He concluded that Christine's expert valuation would have been accurate if the marital home and surrounding 1.48-acre parcel of property were not encumbered by mutual farming and access rights. He opined that the encumbrance rendered the property almost unmarketable.

Ultimately, the trial court valued the marital home and surrounding 1.48-acre parcel at $158,900, less the outstanding $72,500 mortgage. Because the parties' experts testified that the property's fair market value was $173,000, less an unspecified amount to account for the encumbrance on the property, the trial court did not clearly err by valuing the marital home at $158,900, less the outstanding $72,500 mortgage.

Nor did the trial court clearly err in its ultimate distribution of the marital home. It divided the parties' equity in the marital home into two equal $43,200 shares. It then awarded Charlie the marital home and ordered him to pay Christine her share of the equity within six months of entry of the judgment of divorce. It also required Charlie to refinance the home and maintain mortgage payments during that period. Critically, the trial court held that if Charlie failed to do so, it would reconsider its distribution of the marital home.

It is unclear from the record whether Charlie had the financial means to pay Christine her share of equity in the marital home, or whether he did so within six months of entry of the judgment of divorce. Christine maintained that he did not. Although Charlie was incarcerated, he testified that he may have been able to pay Christine her share of the equity in the marital home with the help of a family member. The trial court left the door open on the distribution to ensure that the distribution was equitable. The decision hinged on Charlie paying Christine for her equity in the marital home. Until it is clear that he is not able to do that, we cannot say that this distribution was inequitable. Given this evidence, we are not left with a definite and firm conviction that the trial court erred in its ultimate distribution of the marital home.

## B.  HOUSEHOLD ITEMS AND FURNISHINGS

Christine argues that the trial court clearly erred by awarding the parties the personal property and household furnishings in their respective possessions on the date of trial.  Because the trial court failed to clearly explain its decision to award Charlie the personal property that remained in the marital home, we agree.

As previously noted, "[t]he goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger*, 277 Mich App at 716-717 (citation omitted).  "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717 (citations omitted).

The trial court awarded the parties the personal property and household furnishings in their respective possessions on the date of trial.  Although the parties failed to present evidence regarding the specific personal property and household furnishings in their respective possessions or the total value of such items, Christine testified that she only took her "personal items" when she moved out of the marital home and had not taken any furniture from the marital home.  The trial court's decision to award Charlie the property that remained in the marital home was a significant departure from a congruent distribution.  Because the trial court did not clearly explain its reasoning for doing so, it clearly erred in this regard.

## C.  THE PARTIES' DOGS

Christine argues that the trial court clearly erred by awarding three of the parties' four dogs to Charlie.  We disagree.

Christine testified that she left the parties' four dogs at the marital home when the parties separated.  She moved into a rental apartment and eventually took one of the dogs to live with her there.  She acknowledged that her landlord did not allow her to keep dogs in the apartment but she did so anyway.  After the parties separated, Charlie continued caring for the dogs in his possession.  He was later incarcerated, at which point the parties' adult son cared for the dogs while residing at the marital home.  The parties each purchased food for the dogs.  And Charlie paid all of the veterinary bills.

The trial court did not clearly err by awarding three of the parties' four dogs to Charlie.  The record reflected that the parties each contributed to the dogs' necessities and wellbeing.  The record also reflected that the parties each had barriers to their future care of the dogs.  Charlie was incarcerated, and Christine was not permitted to keep dogs at her rental apartment.  Yet, the parties' adult son cared for the dogs during Charlie's incarceration.  Given these circumstances, we are not left with a definite and firm conviction that the trial court's chosen distribution was inequitable.

## D.  THE PARENT PLUS LOAN

Christine argues that the trial court clearly erred by assigning her the sole obligation to pay the Parent PLUS loan.  We disagree.

Generally, marital debts are treated as negative assets and are allocated according to the same equitable principles that govern the division of marital assets. See *Butler v Simmons-Butler*, 308 Mich App 195, 209; 863 NW2d 677 (2014). Christine took out a Parent PLUS loan with a principal balance of $13,250.20. She did so to fund the education of the parties' adult daughter. Christine testified that the parties discussed student loans and jointly funding their daughter's education in the past. But she did not know whether they specifically discussed the Parent PLUS loan before she took it out. She independently took out and made payments on the loan during the parties' marriage. Charlie, on the other hand, testified that he did not know about the Parent PLUS loan until Christine took it out, and he did not agree to be bound by its terms.

The trial court did not clearly err by assigning Christine the sole obligation to pay the Parent PLUS loan. With a principal balance of $13,250.20, the loan was a relatively small portion of the marital estate. The record reflected that Christine took out the loan without specifically consulting Charlie. It also reflected that Christine independently made payments on the loan throughout the parties' marriage. Given these circumstances, we are not left with a definite and firm conviction that the trial court erred by assigning Christine the loan.

## E. THE TRIAL COURT'S DISPOSITIVE RULING

With the exception of the trial court's distribution of the parties' household items and furnishings, we are not left with a definite and firm conviction that the trial court's ultimate property division was inequitable.

As previously indicated, if the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Cassidy*, 318 Mich App at 477. "The dispositional ruling is discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable." *Id*.

The trial court awarded Christine the parties' utility vehicle, all-terrain vehicle, lawnmowers, and patio furniture. It also awarded Christine her equity in the marital home, bank accounts, retirement accounts, accrued leave time from work, and car. She also retained the Parent PLUS loan obligation. In comparison, the trial court awarded Charlie his partial interest an unvalued hunting property, his equity in and title to the marital home, the household items and furnishings in the marital home, and the parties' farming equipment. It also awarded Charlie his bank accounts, retirement accounts, and car. While the trial court may not have divided the marital estate into mathematically equal portions, the record reflects that it did not significantly depart from congruence as a whole. With the exception of the trial court's distribution of the parties' household items and furnishings, we are not left with a definite and firm conviction that the trial court's ultimate property division was inequitable.

## IV. CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings. We affirm the trial court's decision except as it relates to the household items and furnishings. We reverse its decision as it relates to the distribution of the household items and furnishings and remand for further proceedings consistent with the opinion. We emphasize that nothing in this opinion prevents the

trial court from reassessing the equity of the distribution if Charlie was unable to or did not compensate Christine for her equity in the marital home.  We do not retain jurisdiction.


/s/ Noah P. Hood
/s/ James Robert Redford