*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IVORY LINDA QUALLS,

      Plaintiff-Appellee,

v

ANTHONY DWAYNE JENKINS,

      Defendant-Appellant.

UNPUBLISHED
September 23, 2024
12:39 PM

No. 366319
Calhoun Circuit Court
LC No. 2022-001268-DO

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this divorce action, defendant appeals by right the property division ordered in the trial court's judgment of divorce. We reverse the trial court's finding that the increase in value of the marital home that occurred during the marriage was plaintiff's separate property. In all other respects, we affirm.

## I. BACKGROUND

The parties got married in 2013. At the time of the trial, plaintiff was 57 years old, and defendant was 60 years old. There were no children born of this marriage; however, each party has adult children from previous relationships. Plaintiff has asserted that she only married defendant after he agreed to the following:

> l. The parties would reside in Plaintiff's premarital home . . . and Plaintiff would pay all ownership expenses (mortgage, taxes, assessments, and homeowner's insurance);
>
> 2. Plaintiff would cosign a loan with Defendant to pay off his vendee's land contract interest on his premarital home . . . . The home would become his rental income property and he could retain all the income as his separate property;
>
> 3. Neither party would ever seek any interest in the other's home;

-1-

4. Neither party would seek any interest in the other's retirement plan interests;

5. Defendant's income . . . would be his separate property and Plaintiff's wage income would be her separate property;

6. All financial accounts in Plaintiff's sole name would be her separate property and all financial accounts in Defendant's sole name would be his separate property.

Plaintiff testified that she would not have married defendant had he not agreed to these terms. Defendant, however, testified that there was no agreement made before the parties married. Regardless, it is undisputed that the six-point agreement was never reduced to writing, and plaintiff claims that it was an oral agreement. Plaintiff additionally testified that, until the parties were married, she was unaware that defendant was responsible for paying back taxes and child-support arrearages. Plaintiff specifically testified that, had she had known about these debts, she would not have entered the marriage.

When the parties got married, defendant moved into plaintiff's premarital home and began using his premarital home as a rental property. Plaintiff testified that she expected defendant to put his rental property proceeds toward his retirement savings. The parties stipulated that: (1) the marital interest in plaintiff's retirement account was $233,448.98, and (2) defendant's retirement account—which was solely accumulated during the parties' marriage—was worth $3,526.96. At the time of the trial, plaintiff's annual income was approximately $127,218, and defendant's annual income—including his rental property income—was approximately $67,409. During the marriage, the parties kept their financial accounts in their separate names, never opened a joint bank account, and never incurred a joint debt.

The trial court found that "the six point verbal agreement in this matter was a condition prior to the marriage"; however, the trial court also concluded that it did not have the authority to enforce an oral premarital agreement. Nevertheless, the trial court stated that the parties "split bills like roommates" and "never intended this to be a true marriage in the sense of the business of a marriage." The trial court found defendant at fault for the breakdown of the marital relationship because defendant: (1) agreed to the six-point premarital agreement with no intention of following it, (2) "concealed his substantial debt both in child support and tax liability," and (3) "emotionally abandoned" plaintiff. However, the trial court found that the evidence did not support plaintiff's accusations that defendant engaged in extramarital affairs. In particular, plaintiff believed defendant was having an affair with his former stepdaughter, but this speculation was fueled only by the fact that defendant communicated with and visited her on a regular basis.

The trial court found that the marital residence was not commingled and remained plaintiff's separate property. Although the trial court found that defendant's rental property was commingled, the trial court acknowledged that the parties agreed that its full value would be awarded to defendant. Furthermore, the trial court divided a portion of plaintiff's 401(k) retirement account, rendering a 70-30 division favoring plaintiff. Not included in this 70-30 division was $58,000 that the court awarded to plaintiff on the basis of its conclusion that defendant had squandered rental income that the parties agreed would go toward retirement savings. Put

differently, the court awarded $58,000 from the retirement account and then also awarded plaintiff 70% of what remained.

## II.  STANDARDS OF REVIEW AND GOVERNING LAW

"In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property."  *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014).  "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made.  Special deference is afforded to a trial court's factual findings that are based on witness credibility."  *Id*. at 555 (quotation marks and citation omitted).  If we uphold the trial court's findings of fact, then we must determine "whether the dispositive ruling was fair and equitable in light of those facts."  *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992).  The dispositional ruling is discretionary and should be affirmed unless we are "left with the firm conviction that the division was inequitable."  *Id*. at 152.  We may modify judgments to rectify mistakes, interpret ambiguities, and alleviate inequities.  *Hagen v Hagen*, 202 Mich App 254, 258; 508 NW2d 196 (1993).

## III.  FAULT

Defendant argues that the trial court erred by finding him at fault for the breakdown of the marital relationship.  We disagree.

"[F]ault is clearly a proper factor to consider in the division of marital property."  *Washington v Washington*, 283 Mich App 667, 675-676; 770 NW2d 908 (2009).  "In determining 'fault' as one of the factors to be considered when fashioning property settlements, courts are to examine the conduct of the parties during the marriage."  *Welling v Welling*, 233 Mich App 708, 711; 592 NW2d 822 (1999) (quotation marks and citation omitted).  When considering fault, "[t]he question . . . is whether one of the parties to the marriage is more at fault, in the sense that one of the parties' conduct presented more of a reason for the breakdown of the marital relationship than did the conduct of the other."  *Id*.  The trial court must not place excessive weight on the factor of fault.  *McDougal v McDougal*, 451 Mich 80, 89-90; 545 NW2d 357 (1996).  "[F]ault is an element in the search for an *equitable* division—it is not a punitive basis for an inequitable division."  *Id*. at 90.

In this case, the trial court determined that defendant was at fault for the breakdown of the marital relationship because he: (1) agreed to the six-point premarital agreement with no intention of following it, (2) "concealed his substantial debt both in child support and tax liability," and (3) "emotionally abandoned" plaintiff.  The trial court reasoned as follows:

> The court finds that defendant absolutely misrepresented himself to the plaintiff. He failed to disclose that he did not properly support his children and then he had excessive child support arrearages and he failed to tell her that he hadn't paid taxes for years.  This caused an expenditure of marital funds and assets as well as caused increased liabilities when the parties could not file joint taxes and caused even more of a separation in this marriage.

Notably, the trial court did not find evidence that defendant engaged in any extramarital relationships. The trial court explained at length why it found plaintiff to be more credible than defendant in this matter, and "[s]pecial deference is afforded to a trial court's factual findings that are based on witness credibility." *Hodge*, 303 Mich App at 555.

Defendant argues that the trial court erred by faulting defendant for failing to honor the oral premarital agreement because such an agreement was unenforceable. It is undisputed that, pursuant to the statute of frauds, a premarital agreement cannot be enforced unless it is in writing. MCL 500.132(1)(c). However, even though the trial court found that "the six point verbal agreement in this matter was a condition prior to the marriage," it expressly acknowledged that it could not enforce an oral premarital agreement. Notably, although the trial court's findings reflected the agreement by awarding each party their respective financial accounts and houses, it also deviated from the agreement by splitting the parties' retirement accounts. Further, while a court cannot enforce an oral premarital agreement, that does not mean it cannot find that such an oral agreement was, in fact, made. Moreover, it was appropriate for the court to consider its finding that defendant entered into a premarital agreement he did not intend to keep when crafting an equitable distribution of the marital property, even if the agreement is not enforceable.

Defendant argues that the trial court erred by considering his debts because these debts were accrued prior to the marriage, and an analysis of marital fault must focus only on conduct that occurred during the marriage. It is true that when courts consider fault they "are to examine the conduct of the parties during the marriage." *Welling*, 233 Mich App at 711 (quotation marks and citation omitted). However, while defendant accrued the debt prior to the marriage, he continued concealing its existence from plaintiff well after they were married. Defendant further argues that this concealment could not have caused the breakdown in the marriage because they continued to be married for many years after the truth came out, and plaintiff testified that she had forgiven him.[1] However, conduct early in a marriage can still contribute to a breakdown that is not completed until several years later. Indeed, this conduct could have eroded plaintiff's trust in defendant, leaving her more susceptible to believe defendant's regular absences were the result of infidelity. Moreover, misconduct early in a marriage could lay an early foundation for resentment that builds over time, especially when viewed in the context of the other reasons the court gave for finding defendant at fault—such as the emotional abandonment that defendant does not contest on appeal.

In sum, we discern no error arising from the court's finding that defendant was at fault for the breakdown in the marriage.

---

[1] Defendant makes cursory, unsupported references to "the doctrines of waiver and estoppel by laches" without explaining the elements of these equitable remedies nor how they apply in this case. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020) (quotation marks and citation omitted).

## IV. RETIREMENT ACCOUNT

Defendant's arguments regarding the trial court's division of the parties' retirement account are without merit.

Retirement benefits that accrue during the marriage are considered part of the marital estate and are, therefore, subject to division. See MCL 552.18(1). Trial courts must "include a determination of the property rights of the parties in the judgment of divorce." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). "The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008)(citation omitted).

> [T]he following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks*, 440 Mich at 159-160 (citation omitted).]

The trial court must make specific findings concerning the relevant factors. *Woodington v Shokooki*, 288 Mich App 352, 363-364; 792 NW2d 63 (2010).

In this case, the trial court found that subtracting defendant's marital retirement funds—$3,526.96—from plaintiff's marital retirement funds—$233,448.98—resulted in $229,922.02 that needed to be divided equitably between the parties. See MCL 552.18(1). However, the trial court also determined that defendant squandered $58,000 in rental income that should have been divisible retirement funds pursuant to the parties' agreement. The trial court explained that defendant

> took all income and did what he wanted with it. That was part of the agreement because the income from that rental property was supposed to be his starting of his retirement account, which I figured out if he had, in fact, put that income as testified would have been approximately $58,000.00 that he would have in a retirement account. And I find that that was what was agreed to by the parties, that he was going to take the income from that property and put it there.

Accordingly, the trial court subtracted $58,000 from the divisible $229,922.02 retirement funds, and determined that there was $171,992 for the trial court to equitably divide. The trial court found that "[t]his was in no way a 50/50 marriage. It was more like a 70/30 marriage." Accordingly, the trial court found "that the remaining 171,992 should be divided as follows: 70 percent to the plaintiff, 30 percent to the defendant."

## A. LOPSIDED DIVISION OF FUNDS

Defendant argues that the trial court erred by rendering a 70-30 division of plaintiff's retirement account. We disagree.

Defendant argues that the trial court failed to consider the parties' contributions in proportion to their respective incomes, which resulted in the trial court unfairly weighing the contribution factor in favor of plaintiff. However, the trial court noted that it "looked at" the parties' incomes, and found as follows:

> Contributions of the parties to the marital estate. There is no doubt, once again, the majority was contributed by the plaintiff. [Defendant] paid some expenses but he did what he wanted to with his money. He did what he wanted to in terms of social activities. The defendant spent the majority of her time working and saving for her boys.

> \* \* \*

> Both parties can provide for their basic necessities and have the ability to do so. Both parties have the ability to earn a decent income . . . . Both parties make a more than fair living wage, neither party is—is anywhere near poverty level . . . .

Accordingly, the trial court did consider the parties' incomes when making its findings, and the trial court did not clearly err by determining that plaintiff contributed more to the marital estate than defendant.

Defendant argues that the trial court erred by finding that the parties were at different stages of their lives. The trial court found as follows:

> Life status of the parties. You know, where the plaintiff has settled down . . . the defendant is still ready to go and have a social life and that's his choice, but certainly they are at different stages of their life in—in where they want to be with retirement, etcetera, or a marital partner.

Defendant specifically argues that there was no evidence that he participated in clubbing or nightlife or that he engaged in hobbies such as golf or bowling; however, the trial court did not suggest that. Nevertheless, there was evidence that defendant regularly visited people in Flint and had visitors over at the parties' house without plaintiff being present. Defendant further argues that because the parties both planned to retire soon, the trial court erred by determining that the parties were at different stages of their retirement efforts. However, the parties clearly had very different saving-account balances associated with their retirement efforts. Therefore, the trial court did not clearly err by finding that the parties were at different stages of their lives.

Defendant disputes the court's characterization of the parties' marriage, which lasted nine years and eight months, as "fairly short." Defendant argues that "it is an unwritten rule among family law practitioners in Michigan that Marriages over ten years are considered long term marriages." In addition to being wholly unsupported by any citations, this argument does not help

-6-

defendant because this marriage was shorter than ten years; therefore, even by defendant's own standard, this was not a long-term marriage. Regardless, the court's highly subjective opinion on the length of the parties' marriage was reasonable when the marriage is viewed in comparison to those that last for several decades.

Defendant argues that the trial court erred by mischaracterizing the parties' marriage as more of a roommate situation. The trial court found as follows:

This was never a true marriage. It was more like a roommate relationship.

These parties, what appears for religious reasons, wanted to get married. They did not want the business portion of the marriage. They kept their finances separate, they kept their lives separate, they did not know what each other was doing with funds, they did not seek permission on agreement for purchases or moves. They split bills like roommates. They went to the grocery store and separated the groceries in the cart and paid for them, they had separate accounts, they did not share names. They never intended this to be a true marriage in the sense of the business of a marriage.

A marriage—and the equitable rights to acquire property—does not end "simply because of an antagonistic living arrangement . . . ." *Wilson v Wilson*, 179 Mich App 519, 524; 446 NW2d 496 (1989).[2] However, the trial court never insinuated that the parties' equitable rights to property accumulated during the marriage ended simply because the parties acted like roommates. Instead, the trial court's finding that the parties acted like roommates was made in the context of how the parties separately handled their finances, which was an important part of this case. The record makes clear that the parties did not intermingle their finances, assets, and resources the way many, if not most, married couples do. Instead, they split expenses 50/50 in a manner more akin to what one might expect from roommates. This was a logical consideration in support of the court's decision that an equitable distribution of marital property required an unequal distribution. Therefore, the trial court did not clearly err by comparing the parties' separate finances to a roommate situation.

Defendant argues that the court's comments regarding his debts were unsupported by the record. Defendant cites the trial court's comment "that a good majority of income that should have again been in the savings accounts or contributed was squandered in this matter because the defendant had these excessive taxes that he had not paid for years, as well as he had child support . . . ." This is an example of how a quick remark buried in lengthy findings can be pulled out of context to create the appearance of unsupported findings. The first half of the statement seems to refer to the income from the rental property that was supposed to go toward the parties'

---

[2] Court of Appeals cases decided before November 1, 1990, are not binding. MCR 7.215(J)(1). Although this Court is not "*strictly required* to follow uncontradicted opinions from this Court decided prior to November 1, 1990," those opinions are "nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

retirement savings but ultimately did not. The second half of the statement accurately references the fact that defendant entered the marriage with unpaid taxes and child support arrearages. It is true that the record is unclear regarding the amount of back taxes defendant owed and regarding a connection between the debts and the failure to funnel the rental income into the retirement account. However, it is clear from the record that, while these two facts were heavily relied on by the court, the possibility of a causal connection between these facts was of no import.

Defendant argues that the trial court put undue weight on marital fault and cites to several cases in which trial courts' property divisions were reversed after disproportionate weight was given to fault in the form of marital affairs. See, e.g., *Sparks*, 440 Mich at 154, 158-160, 163 (reversing a 75-25 property division in which the trial court: (1) "made no finding regarding the age of the parties, the health of the parties, status in life, necessities and circumstances of the parties, the earning abilities of the parties, or other general principles of equity"; and (2) assigned disproportionate weight to fault in the form of a marital affair); *Berger*, 277 Mich App at 721-722 (reversing a 70-30 property division in which the trial court: (1) disproportionately weighed fault, and (2) appeared to punish the defendant for a marital affair instead of achieve equity). However, the trial court in this case did not find evidence that defendant engaged in any extramarital relationships, and for the reasons previously stated, the trial court did not improperly place excessive weight on the factor of fault. See *McDougal*, 451 Mich at 89-90. Rather, while the court did hold fault against defendant, its lopsided distribution of marital property was primarily based on plaintiff's disproportionate contributions to the marital estate. Therefore, defendant's argument that the court used its division of property to "penalize" defendant is unsupported by the record.

In conclusion, the court's findings in support of its decision to award plaintiff 70% of the retirement account were supported by the record.

## B. REDUCTION OF DIVISIBLE SHARE

Defendant argues that the trial court erred by reducing his interest in plaintiff's retirement account by $58,000 because of his alleged failure to save all the rental income that he received during the marriage. We disagree.

Plaintiff testified multiple times that she and defendant agreed that defendant would put all the rental property proceeds toward his retirement savings. The trial court explained at length why it found plaintiff to be more credible than defendant in this matter, and "[s]pecial deference is afforded to a trial court's factual findings that are based on witness credibility." *Hodge*, 303 Mich App at 555. Although there was no evidence introduced detailing how defendant spent the rental property proceeds, his savings account—containing $17,632.23—demonstrated that he failed to use this income consistent with his promises. Defendant also suggests that the trial court essentially "punished" him for earning less money than plaintiff because he was not able to save "every penny" of the rental income. First, the court's frustration with the failure to save did not arise in a vacuum; the frustration was borne of the fact that defendant had promised to save this money but failed to do so. Moreover, defendant did not fail to save "every penny"; the record

suggests that defendant saved very little, if any, of this money.[3]  Finally, plaintiff testified that the parties had never intended that defendant would have any interest in her retirement savings and that the two would save for retirement separately.  Given the evidence that the parties kept their finances entirely separate, defendant was fortunate that the court decided to subject any portion of plaintiff's retirement savings to division.

In conclusion, we discern no errors warranting reversal arising from the trial court's division of plaintiff's retirement account.

## V.  MARITAL HOME

Defendant argues that the trial court erred by finding that the marital residence was plaintiff's separate property and any appreciation in value did not belong to the marital estate.  We agree.

When considering how to divide property in a divorce proceeding, the trial court's first consideration must be to determine the parties' marital and separate estates.  *Reeves v Reeves*, 226 Mich App 490, 493-494; 575 NW2d 1 (1997).  Marital property is property that was acquired or earned by the parties during the marriage, and, with certain exceptions, separate property is property that the parties obtained or earned before the marriage.  See *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010).  However, classification of an asset is more complicated with respect to a marital home that was separately purchased by one party prior to the marriage:

> The sharing and maintenance of a marital home affords both spouses an interest in any increase in its value (whether by equity payments or appreciation) over the term of a marriage.  *Such amount is clearly part of the marital estate.*  However, the down payment, the equity built up before the parties' marriage, and any appreciation that occurred before the parties' marriage should [be] considered defendant's separate estate. [*Reeves*, 226 Mich App at 495-496 (emphasis added).]

In this case, plaintiff acquired the marital home before the parties were married, but both parties lived in the home for the entirety of the nearly decade-long marriage.  Therefore, the court correctly found that "the down payment, the equity built up before the parties' marriage, and any appreciation that occurred before the parties' marriage" is plaintiff's separate property.  See *Id*.  However, the defendant has "in interest in any increase" in the marital home's value because this "amount is clearly part of the marital estate."  *Id*.  Therefore, the trial court erred by finding that the entire value of the marital home was plaintiff's separate property; the increase in value following the parties' marriage is marital property.  The trial court's reasoning was based entirely on defendant's relative lack of financial contribution to the improvements made to the home, but this is a misunderstanding of how a court must classify marital or separate property in the absence of an enforceable premarital agreement.  While this might be an appropriate equitable

---

[3] It is unclear from the record how much of the money in defendant's savings account came from the rental income.

consideration with respect to property distribution, this does not convert the marital home to separate property.

## VI. CONCLUSION

The court's finding that defendant was at fault for the breakdown of the marital relationship is affirmed. The court's distribution of plaintiff's retirement account is likewise affirmed. The court's finding that the marital home's increased value during the parties' marriage is plaintiff's separate property is reversed. This case is remanded to the trial court for limited purpose of equitably distributing this asset. We do not retain jurisdiction. Neither party having fully prevailed, no costs may be taxed. See MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado