*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JULIE A. WEBER,

        Plaintiff-Appellee,

v

LUCAS J. WEBER,

        Defendant-Appellant.

UNPUBLISHED
December 20, 2024
9:20 AM

No. 367955
Tuscola Circuit Court
LC No. 2022-031985-DM

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In this divorce action, defendant, Lucas J. Weber (Lucas), appeals by right the judgment of divorce entered following a bench trial. On appeal, Lucas argues that the trial court clearly erred by failing to assess the value of the parties' marital home and livestock (i.e., cattle) before distributing their marital assets. He also argues that the trial court abused its discretion by inequitably distributing the parties' marital assets in favor of plaintiff, Julie A. Weber (Julie).[1] Because the parties did not dispute the respective values of their marital home or cattle, the trial court did not clearly err by distributing the parties' marital assets without specifically assessing their value. And because the record supports the trial court's findings underlying its distribution of the parties' marital assets, the trial court did not abuse its discretion by awarding the parties' marital home to Julie. We therefore affirm.

## I. BACKGROUND

The parties married in December 2012. Throughout much of their marriage, the parties lived together with their two minor children on a 20-acre farm where they grew crops and raised cattle. In May 2021, the parties informally separated. In April 2022, Julie filed a complaint for divorce. She sought sole custody of the parties' minor children and an equitable distribution of

---

[1] Lucas initially challenged the trial court's holding regarding child custody and parenting time but has since withdrawn the issue from his appellate brief. See *Weber v Weber*, unpublished order of the Court of Appeals, entered March 5, 2024 (Docket No. 367955).

the parties' marital assets. She also successfully moved for a preliminary injunction temporarily prohibiting either party from selling, encumbering, or otherwise disposing of their marital assets. In May 2022, Lucas answered Julie's divorce complaint. He sought joint custody of the parties' minor children and an equitable distribution of the parties' marital assets.

In June 2022, the trial court entered a temporary stipulated order concerning the parties' use of marital assets and recurring payment obligations. The order required Lucas to provide an accounting of funds he obtained by encumbering the parties' individual retirement accounts (IRAs). It afforded Julie exclusive use of the parties' marital home and permitted Lucas to farm the surrounding land. It also required Lucas to maintain certain recurring payments, including the mortgage, electricity bill, life insurance premiums, farming debt obligations, and installments to compensate Julie for the funds he obtained by encumbering her IRA.

In the months that followed, Julie moved for entry of multiple show-cause orders and moved to compel Lucas's written discovery responses. She alleged that Lucas failed to provide an accounting of the funds he withdrew from the parties' IRAs and neglected to maintain recurring payments as required by the temporary stipulated order concerning the parties' use of marital assets and recurring payment obligations. She also alleged that Lucas failed to provide adequate written discovery responses as required by the Michigan Court Rules. The trial court repeatedly held Lucas in civil contempt. Although the trial court declined to enter a default divorce judgment in Julie's favor, it instructed her that, if necessary, she could move for discovery sanctions prohibiting Lucas from admitting certain evidence at trial.

The trial court held a bench trial over the course of multiple days between May and July 2023. During the bench trial, the parties testified about their marital relationship. According to Lucas, the parties slept separately for several years before they informally separated in May 2021. The parties both testified that they attended marriage counseling. Julie stated that Lucas had extramarital affairs that ultimately led to the breakdown of their marriage. Lucas acknowledged that he had extramarital affairs but stated that Julie's postpartum depression caused the breakdown of their marriage.

The parties also testified about their employment and income. Lucas stated that he was employed as a part-time registered nurse, and although his nursing wages varied, he anticipated earning between $50,000 and $75,000 in 2023. Lucas earned additional income by growing crops, raising cattle, and selling both. He did not file income tax returns in recent years and did not know his total annual income. He explained that the parties' 2022 crop yield was lower than anticipated such that he received roughly $29,000 in insurance proceeds that year. Julie, for her part, stated that she was employed as a full-time speech therapist and earned $89,000 annually. She helped Lucas grow crops and raise cattle but stated that Lucas did not share farming income or insurance proceeds with her. She stated that Lucas attended nursing school during the parties' marriage, and she supported their family financially during that period.

The parties additionally testified about their assets. They owned myriad personal property, including farm equipment, roughly 80 head of cattle, and multiple vehicles, including cars, boats, snowmobiles, and an all-terrain vehicle. They both maintained retirement savings accounts and life insurance policies. They jointly owned their marital home. Lucas owned another home that

he purchased before the parties married, and Julie owned another home she received as a gift from her parents during the parties' marriage.

The parties testified at length about their debts and the disposition of their marital assets. They explained that, collectively, they were indebted to multiple creditors in excess of $500,000. The parties both wished to liquidate assets to pay down their debts but disagreed about the manner in which they would do so. Julie requested that the trial court order the parties to liquidate the farm equipment and cattle but award her the marital home and permit her to assume sole responsibility for the outstanding mortgage. Lucas, in contrast, requested that the trial court order the parties to liquidate the farm equipment, cattle, and marital home. Julie estimated that the marital home and surrounding 20-acre farm had a fair market value between $200,000 and $250,000. Lucas estimated that the cattle had a fair market value of roughly $68,000. Neither party disputed the other's estimated value or proffered evidence to the contrary. Indeed, Lucas identified the outstanding mortgage on the marital home but did not address its estimated value in his trial brief. Likewise, Julie stated that beef cows were favorably priced at the time but otherwise did not address the cattle's estimated value in her trial brief.

In July 2023, the trial court issued a written opinion regarding the terms and conditions of its forthcoming divorce judgment. The trial court awarded the parties joint legal custody of the children, awarded Julie primary physical custody of the children, and ordered Lucas to pay $1,018 in monthly child support. Relying on the factors set forth in *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992), the trial court departed from an equal property distribution in Julie's favor based primarily on her disproportionate contributions to the marital estate, Lucas's infidelity, and Lucas's failure to comply with the trial court's orders throughout the proceedings. The trial court awarded Julie the marital home subject to the outstanding mortgage and the home gifted to her during the parties' marriage. It also awarded Julie the parties' life insurance policies, her IRA, one inoperable vehicle, and the personal property in her possession. The trial court awarded Lucas the home he owned prior to the parties' marriage subject to the outstanding mortgage. It also awarded Lucas his IRA, the remainder of the parties' vehicles, and the personal property in his possession. The trial court ordered the parties to sell the cattle and farm equipment and use the proceeds to pay down outstanding debts. It also assigned the parties various debts they incurred individually. In September 2023, the trial court entered a divorce judgment in accordance with its written opinion. This appeal followed.

## II. STANDARDS OF REVIEW

This Court assesses the trial court's marital property distribution by first reviewing the trial court's findings of fact. *Cassidy v Cassidy*, 318 Mich App 463, 476-477; 899 NW2d 65 (2017). "Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Id*. at 477. Factual findings are clearly erroneous if the reviewing court "is left with the definite and firm conviction that a mistake has been made." *Hodge v Parks*, 303 Mich App 552, 555; 844 NW2d 189 (2014). "This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses." *Johnson v Johnson*, 276 Mich App 1, 11; 739 NW2d 877 (2007) (quotation marks and citation omitted). "If the trial court's findings of fact are upheld, this Court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Cassidy*, 318 Mich App at 477. "The dispositional ruling is

discretionary and will be affirmed unless this Court is left with a firm conviction that the division was inequitable." *Id*.

## III. LAW AND ANALYSIS

Lucas argues that the trial court clearly erred by failing to assess the value of the parties' marital home and cattle before distributing their marital assets. He also argues that the trial court abused its discretion by inequitably distributing the parties' marital property in Julie's favor. We disagree.

"In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010) (citation omitted). "As a prelude to this property division, a trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). "There are numerous ways in which a trial court can make such a valuation, but the most important point is that the trial court is obligated to make such a valuation *if the value is in dispute*." *Id*. (footnotes omitted and emphasis added).

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008) (citation omitted). "The trial court need not divide the marital estate into mathematically equal portions, but any significant departure from congruence must be clearly explained." *Id*. at 717 (citations omitted). A trial court may consider the following factors when distributing the marital estate:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id*. (citations omitted).]

"The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight." *Woodington v Shokoohi*, 288 Mich App 352, 363; 792 NW2d 63 (2010). In other words, no rigid framework applies, the trial court has "broad discretion in fashioning its rulings[,] and there can be no strict mathematical formulations." *Sparks*, 440 Mich at 158-159. "The trial court must make specific findings regarding the factors it determines to be relevant." *Woodington*, 288 Mich App at 363-364.

"[F]ault is clearly a proper factor to consider in the division of marital property." *Washington v Washington*, 283 Mich App 667, 675-676; 770 NW2d 908 (2009). "In determining fault as one of the factors to be considered when fashioning property settlements, courts are to examine the conduct of the parties during the marriage." *Welling v Welling*, 233 Mich App 708, 711; 592 NW2d 822 (1999) (quotation marks and citation omitted). When considering fault, "[t]he question . . . is whether one of the parties to the marriage is more at fault, in the sense that one of the parties' conduct presented more of a reason for the breakdown of the marital relationship than did the conduct of the other." *Id*. The trial court cannot place excessive weight on the factor of

fault. *McDougal v McDougal*, 451 Mich 80, 89-90; 545 NW2d 357 (1996). "[F]ault is an element in the search for an equitable division—it is not a punitive basis for an inequitable division." *Id.* at 90.

Here, Lucas argues that the trial court clearly erred by failing to assess the value of the parties' marital home and cattle before distributing their marital assets. We disagree. Although a trial court must "make specific findings regarding the value of the property being awarded in the judgment," it must only do so if the value of the property is in dispute. See *Olson*, 256 Mich App at 627. During the bench trial, Julie estimated that the marital home and surrounding 20-acre farm had a fair market value between $200,000 and $250,000. And Lucas estimated that the cattle had a fair market value of roughly $68,000. Neither party disputed the other's estimated value or proffered evidence to the contrary. Namely, Lucas identified the outstanding mortgage on the marital home but did not address its estimated value in his trial brief. Likewise, Julie stated that beef cows were favorably priced at the time but otherwise did not address the cattle's estimated value in her trial brief. Because the value of such marital property was not in dispute, the trial court did not clearly err by failing to specifically assess the value of the parties' marital home and cattle before distributing their marital assets.

Lucas further argues that the trial court abused its discretion by inequitably distributing the parties' marital property in Julie's favor. He asserts that the trial court erroneously failed to make findings under each factor set forth in *Sparks*, 440 Mich 141, and disproportionally relied on one factor—fault—when distributing the parties' marital property. We again disagree.

Trial courts are not required to make findings under each *Sparks* factor. Rather, trial courts are only required to make findings under the *Sparks* factors they deem relevant to the case. See *Woodington*, 288 Mich App at 363-364. And although trial courts cannot place excessive weight on a party's fault in distributing their marital assets, see *McDougal*, 451 Mich at 89-90, they need not give each *Sparks* factor equal weight if the circumstances dictate otherwise. See *Byington v Byington*, 224 Mich App 103, 115; 568 NW2d 141 (1997).

The record reflects that the trial court did not focus solely on Lucas's fault and otherwise supports the trial court's departure from an equal property distribution in Julie's favor. The trial court considered other factors, including the duration of the parties' marriage, Julie's disproportionate contribution to the marital estate, the parties' ability to work, the parties' good health, and Lucas's failure to comply with orders throughout the proceedings. In doing so, the trial court validly exercised its broad discretion by placing greater weight on Lucas's acts and omissions in fashioning its ruling. See *Sparks*, 440 Mich at 158-159.

The record also supports the trial court's findings. During trial, the parties both testified that they married in December 2012. They explained that, throughout much of their marriage, they lived together with their two minor children on a 20-acre farm where they grew crops and raised cattle. They both contributed to the farm labor. Lucas made greater contributions to the farm labor but also retained farm income and insurance proceeds. Separate from the farm labor, they both worked, and Julie supported the family financially while Lucas attended nursing school. They experienced marital difficulties and voluntarily participated in marriage counseling. Lucas acknowledged that he had extramarital affairs that, according to Julie, ultimately led to the breakdown of their marriage. After Julie filed her divorce complaint, the trial court entered

multiple orders regarding Lucas's financial and discovery obligations. It ordered Lucas to respond to written discovery requests, provide an accounting of funds he obtained by encumbering the parties' IRAs, and maintain certain recurring payments, including the mortgage, electricity bill, life insurance premiums, farming debt obligations, and installments to compensate Julie for funds he obtained by encumbering her IRA. Yet Lucas continually failed to comply with the trial court's orders, thereby causing Julie to incur debt to cover certain bills. Because the record reflects that the trial court did not focus solely on Lucas's fault and otherwise supports the trial court's departure from an equal property distribution in Julie's favor, the trial court's dispositive ruling was equitable in light of the relevant circumstances. See *Cassidy*, 318 Mich App at 477.

We affirm.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica